# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

AERO SPACE CONTROLS CORPORATION, )
                                 )
                      Plaintiff, )
                                 )    CIVIL ACTION
            vs.                  )
                                 )    No. 10-1093-KHV
TELEFLEX INCORPORATED,           )
                                 )
                      Defendant. )
_____)

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Teleflex Incorporated's Motion To Dismiss Plaintiff Aero Space Controls Corporation's Complaint, Or In The Alternative, Motion To Stay Proceedings (Doc. #8) filed June 11, 2010. For reasons stated below, the Court sustains defendant's motion to dismiss in part.

## Factual And Procedural Background

The relevant facts are drawn from plaintiff's complaint, the documents attached to the complaint and the exhibits attached to defendant's memorandum in support of its motion to dismiss.[1]

Teleflex, Inc. was the parent of a Nevada corporation called Aero Space Controls Corporation ("ASCC-Nevada"), which owned and operated a small manufacturing facility at 1050 North Mosley in Wichita, Kansas (1050 N. Mosley or "the site"). On April 3, 1990, plaintiff, a Kansas corporation also called Aero Space Controls Corporation ("ASCC-Kansas"), entered into a Purchase Agreement with ASCC-Nevada and Teleflex to purchase all assets of ASCC-Nevada including the real property at 1050 N. Mosley.

---

[1] Plaintiff has not disputed the authenticity of documents which defendant attached to its supporting memorandum. These documents provide context for the factual allegations in the complaint.

Except as specifically assumed in the Purchase Agreement, plaintiff did not assume any liabilities or obligations of ASCC-Nevada arising from the operations at the site prior to closing. In addition, ASCC-Nevada and Teleflex agreed to indemnify plaintiff for certain damages. The Purchase Agreement provided as follows:

> 7.1 [ASCC-Nevada] and its sole shareholder shall indemnify [ASCC-Kansas], and hold it harmless from and against, any loss, liability, claim, obligation, damage or deficiency, including reasonable attorney's fees (collectively "Damages"), arising from: (a) any misrepresentation or breach of warranty made by [ASCC-Nevada] in this agreement; (b) any non-fulfillment by [ASCC-Nevada] of any obligation on the part of [ASCC-Nevada] set forth in this Agreement (other than the covenants qualified in paragraph 6.1); and (c) any liability or obligation of [ASCC-Nevada] arising from the operation of the [ASCC-Nevada] Business up to the Closing Date, other than the Assumed Obligations, but including the Product Liabilities and the Tax Liabilities. * * *
>
> 7.3 [ASCC-Nevada] and [Teleflex] shall indemnify and hold harmless [ASCC-Kansas] from and against any damages arising from the use and ownership prior to closing of the [site], by reason of any claims or demands made against [ASCC-Kansas] by the Environmental Protection Agency and its state and local counterparts finding that [the site] constitutes an environmental hazard.

Agreement ¶¶ 7.1, 7.3.

In the early 1990s, the City of Wichita entered into an agreement with Kansas Department of Health and the Environment ("KDHE") to address groundwater contamination in a large part of north-central Wichita designated as the North Industrial Corridor Site. As part of the North Industrial Corridor investigation, the City and KDHE identified 1050 N. Mosley as a potential source of trichloroethene ("TCE") in groundwater. The City asked ASCC-Kansas to become a party to an agreement between the City and other potentially responsible parties within the North Industrial Corridor Site. On February 22, 2001, ASCC-Kansas notified Teleflex of a potential claim, asking Teleflex to indemnify it under the Purchase Agreement. Teleflex declined to do so.

On March 2, 2004, Jerry Larsen, who worked for ASCC-Nevada from 1976 to 1978, sent KDHE an e-mail which stated that during his tenure, employees dumped TCE on the ground at the

facility and that ASCC-Nevada had purchased five to six 55-gallon drums of TCE. In 2007, after detecting TCE in groundwater near the site and in soil on the site, KDHE notified ASCC-Kansas that the site was a source of TCE contamination.

On February 22, 2007, ASCC-Kansas notified Teleflex of the KDHE claim. Again, Teleflex declined to indemnify ASCC-Kansas. On June 21, 2007, KDHE also notified Teleflex that it had been identified as a potentially responsible party and asked Teleflex to cooperate with KDHE at the site.

On June 12, 2008, ASCC-Kansas and Teleflex entered into a Site Investigation Cooperation Agreement in which they agreed to perform a "Limited Site Investigation." Both ASCC-Kansas and Teleflex continued to deny liability for the contamination at the site. ASCC-Kansas and Teleflex also entered into a "Letter Agreement" with KDHE to perform the Limited Site Investigation. The investigation confirmed the presence of soil and groundwater contamination in excess of KDHE standards at the site.

In a joint meeting with KDHE on February 4, 2010, Teleflex gave KDHE and ASCC-Kansas a report prepared by Geosyntec. The report described a computer model which purported to demonstrate that releases in the late 1970s would no longer be present in the soil at the location of the disposal. Teleflex later provided the model to ASCC-Kansas. On March 1, 2010, ASCC-Kansas notified Teleflex of numerous concerns with the model. Teleflex did not provide further explanation to ASCC-Kansas.

On March 19, 2010, KDHE issued an order which concluded that the site constituted a nuisance, polluted the land and waters and was a health and environmental hazard.[2] ASCC-Kansas

---

[2] The KDHE Order requires ASCC-Kansas to perform a Comprehensive Investigation/Corrective Action Study ("CI/CAS") to determine the nature and extent of environmental contamination at the site. The CI/CAS is also intended to develop a preliminary list
(continued...)

timely requested a hearing with KDHE to contest the administrative order. See Request For Hearing, attached as Exhibit 1 to Brief In Support Of Motion To Dismiss (Doc. #9) filed June 11, 2010. In its request, ASCC-Kansas contends that (1) no nuisance exists at the site; (2) ASCC-Kansas is not responsible for any contaminant at the site; and (3) KDHE lacked authority to order ASCC-Kansas to take investigative and remedial measures because it did not cause or contribute to a release of pollutants at the site. See id.[3]

On March 29, 2010, ASCC-Kansas filed this suit against Teleflex for damages and declaratory relief to enforce the terms of the Purchase Agreement. ASCC-Kansas essentially alleges that the Purchase Agreement creates both a duty to indemnify and a duty to defend covered claims. See Purchase Agreement § 7.1 (general indemnification provision permits recovery of "Damages" defined to include reasonable attorney's fees); id., § 7.3 (buyer entitled to "damages" with no definition of term). ASCC-Kansas seeks costs and expenses, including attorney fees (Claim 1); a declaration that Teleflex is obligated to respond to the KDHE order (Claim 2), indemnity from any further cost, expense or damage related to the environmental contamination at the site (Claim 3) and indemnity from any claims related to the environmental contamination at the site (Claim 4).

In its motion, Teleflex argues that the Court should decline to exercise jurisdiction over any claims for declaratory relief because they are not ripe for adjudication, that ASCC-Kansas has not exhausted administrative remedies and that KDHE has primary jurisdiction over the disputed issues in this case.

---

[2](...continued)
of remedial action objectives and alternatives.

[3]   The parties do not explain the specific nature of the current proceedings before KDHE, but it appears that ASCC-Kansas has sought administrative review of the KDHE order and that the order is not final until KDHE resolves the administrative challenge.

## Analysis

### I.     Diversity Jurisdiction

Before the Court addresses the questions of ripeness, exhaustion and primary jurisdiction, it notes that in addition to claims for declaratory relief, plaintiff has asserted a claim for damages based on diversity jurisdiction. See Complaint (Doc. #1) ¶ 21 (Claim 1 seeks recovery of costs and expenses including attorney fees which plaintiff incurred because of breach of Purchase Agreement). Defendant's motion does not challenge diversity jurisdiction. In its reply, however, defendant argues that plaintiff has not suffered damages in excess of $75,000.00 because it cannot recover attorney fees under the Purchase Agreement. Because defendant first raised this argument in its reply brief, the Court overrules it. See Mondaine v. Am. Drug Stores, Inc., 408 F. Supp.2d 1169, 1203 (D. Kan. 2006); Thurston v. Page, 931 F. Supp. 765, 768 (D. Kan. 1996); see also Mike v. Dymon, Inc., No. 95-2405-EEO, 1996 WL 427761, at *2 (D. Kan. July 25, 1996) (in fairness, court generally summarily denies or excludes all arguments and issues first raised in reply briefs). Even if defendant had properly raised the issue, the Court finds that plaintiff's complaint adequately pleads diversity jurisdiction.

Federal courts may exercise jurisdiction over an action involving parties of diverse citizenship "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). In determining the amount in controversy, the sum which plaintiff claims controls if the claim is apparently made in good faith. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938). When the amount in controversy is challenged, plaintiff must demonstrate that it is not legally certain that its claims are less than the jurisdictional amount. Woodmen of World Life Ins. Soc'y v. Manganaro, 342 F.3d 1213, 1216 (10th Cir. 2003); see Watson v. Blankinship, 20 F.3d 383, 386 (10th Cir. 1994). The legal certainty standard is strict. Generally, dismissal is warranted only where (1) a contract limits the possible recovery, (2) the law

limits the amount recoverable or (3) plaintiffs commit an obvious abuse of federal jurisdiction. Woodmen, 342 F.3d at 1216-17.

Here, plaintiff alleges that because defendant breached the Purchase Agreement, it has incurred costs, expenses and damages in excess of $75,000. See Complaint (Doc. #1) ¶ 21. Defendant argues that even though the *general* indemnification provision permits recovery of attorney fees, plaintiff cannot recover them under the indemnification provision related to environmental hazards. See Purchase Agreement § 7.1 (general indemnification provision permits recovery of "Damages" defined to include reasonable attorney's fees); id., § 7.3 (buyer entitled to "damages" with no definition of term). At this stage and until further briefing on the rules of contract interpretation, defendant has not shown to a legal certainty that plaintiff is not entitled to attorney fees under Section 7.3 of the Purchase Agreement. The record contains a good faith basis for plaintiff's claim that "damages" in Section 7.3 of the Purchase Agreement include attorney fees. The Court therefore overrules defendant's argument that plaintiff has not adequately pled diversity jurisdiction.

**II.    Ripeness**

Defendant argues that until KDHE determines that (1) an environmental hazard exists at the site and (2) the hazard arose because of defendant's activities before 1990, plaintiff's claims for declaratory relief are not ripe.

Initially, the Court notes that the ripeness argument does not apply to plaintiff's claim for costs which it has already incurred. As to plaintiff's claims for declaratory relief, federal jurisdiction extends only to actual cases or controversies. Garcia v. Bd. of Educ., 520 F.3d 1116, 1123 (10th Cir. 2008). This means that throughout the litigation, plaintiff must have suffered or be threatened with an actual injury which is traceable to defendant and is likely to be redressed by a favorable judicial decision. Spencer v. Kemna, 523 U.S. 1, 7 (1998). What makes a declaratory judgment a proper

-6-

judicial resolution of a "case or controversy," rather than an advisory opinion, is the settling of some dispute that affects defendant's behavior toward plaintiff. Hewitt v. Helms, 482 U.S. 755, 761 (1987). Plaintiff must allege facts which demonstrate that judicial resolution of the dispute is properly invoked. Renne v. Geary, 501 U.S. 312, 317 (1991).

Plaintiff's second claim – that defendant must respond to the KDHE order – has a direct and immediate effect on the parties' behavior in response to the order, i.e. payment of costs and attorney fees in responding to the order and responsibility for development of an investigation and cleanup plan. New Mexicans For Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995). Accordingly, plaintiff's second claim is ripe for review. See id. As to plaintiff's third and fourth claims – which relate to indemnity for future investigation and cleanup costs and future claims – defendant correctly notes that such claims will be moot if KDHE ultimately determines that no environmental hazard exists or that any hazard did not arise from defendant's activities before 1990. Therefore plaintiff's third and fourth claims are not ripe for review. See Kane County Utah v. Salazar, 562 F.3d 1077, 1090 (10th Cir. 2009) (because administrative agency may grant plaintiff's pending request, potential claim arising out of agency final decision premature); see also Ohio Forestry Assoc., Inc. v. Sierra Club, 523 U.S. 726, 732 (1998) (ripeness requirement designed to protect agencies from judicial interference until administrative decision has been formalized and effects felt in concrete way by challenging party). Therefore, as to plaintiff's third and fourth claims, the Court sustains defendant's motion to dismiss.[4] The Court overrules defendant's ripeness argument as to plaintiff's first and second claims.

### III. Exhaustion

Defendant argues that plaintiff has not exhausted administrative remedies because it

---

[4] If KDHE rules on these issues before plaintiff's first two claims are resolved, plaintiff may seek leave to amend its complaint to add its third and fourth claims.

currently is challenging the KDHE administrative order. Defendant maintains that the Court should require plaintiff to exhaust its administrative challenge before pursuing suit for declaratory relief.

A litigant generally must exhaust available administrative remedies before seeking judicial relief. Massengale v. Okla. Bd. of Exam'rs in Optometry, 30 F.3d 1325, 1329 (10th Cir. 1994); Rocky Mtn. Oil & Gas Ass'n v. Watt, 696 F.2d 734, 743 (10th Cir. 1982). The exhaustion requirement is judge-made and courts have created several exceptions, such as when the administrative remedy is inadequate. Massengale, 30 F.3d at 1328.

As to plaintiff's first and second claims, plaintiff seeks indemnity for past costs including attorney fees which it incurred in response to the KDHE order and a declaration that defendant must respond to the KDHE order. The KDHE proceeding does not address whether, under the Purchase Agreement, defendant has a duty to indemnify plaintiff for past costs or to respond to the administrative order. Plaintiff's administrative remedy is therefore inadequate. Accordingly, as to its first and second claims, plaintiff is not required to exhaust administrative remedies.

**IV.   Primary Jurisdiction**

Defendant argues that the Court should stay or dismiss this action in favor of the KDHE's primary jurisdiction to decide responsibility for environmental contamination. Primary jurisdiction is a prudential doctrine designed to allocate authority between courts and administrative agencies. S. Utah Wilderness Alliance v. Bureau of Land Mgmt., 425 F.3d 735, 750 (10th Cir. 2005). The doctrine is properly invoked where a decision by a court would threaten the uniformity of a regulatory scheme or require the court to confront issues of fact outside of its conventional experience. Id. at 751 (citing United States v. W. Pac. R.R., 352 U.S. 59, 64 (1956)). In such cases, a court may suspend the judicial process and direct the parties to seek a decision from the appropriate administrative agency, which then assumes primary jurisdiction. Id. Primary jurisdiction is invoked in situations where the courts have jurisdiction over a claim from the very

outset, but it is likely that the case will require resolution of issues that a regulatory scheme has placed in the hands of an administrative body. Marshall v. El Paso Natural Gas Co., 874 F.2d 1373, 1376 (10th Cir. 1989).

As explained above, the KDHE administrative proceeding does not address defendant's duty to indemnify plaintiff for past costs (Claim 1) or its duty under the Purchase Agreement to respond to the KDHE administrative order (Claim 2). Because these issues of contract interpretation are not before KDHE, the Court overrules defendant's motion to dismiss plaintiff's first and second claims under the doctrine of primary jurisdiction.

**IT IS THEREFORE ORDERED** that Defendant Teleflex Incorporated's Motion To Dismiss Plaintiff Aero Space Controls Corporation's Complaint, Or In The Alternative, Motion To Stay Proceedings (Doc. #8) filed June 11, 2010 be and hereby is **SUSTAINED in part**. The Court overrules defendant's motion to dismiss as to plaintiff's claims which seek to recover costs and expenses which plaintiff has incurred including attorney fees (Claim 1) and a declaration that Teleflex is obligated to respond to the KDHE's administrative order (Claim 2). The Court **DISMISSES without prejudice** plaintiff's claims which seek a declaratory judgment that Teleflex must indemnify plaintiff from future costs and damages related to the environmental contamination at the site (Claim 3) and that Teleflex must indemnify plaintiff from and against any and all claims related to the environmental contamination at the site (Claim 4).

Dated this 13th day of October, 2010 at Kansas City, Kansas.

s/ Kathryn H. Vratil<br>
KATHRYN H. VRATIL<br>
United States District Judge